UNITED STATES of America,

v.

Joseph OLIVIERI, Defendant.

No. S3 08 Cr. 0828(VM).

United States District Court,
S.D. New York.

Oct. 21, 2010.

Lisa R. Zornberg, Mark D. Lanpher, U.S. Attorney's Office, New York, NY, for Plaintiff.

Brian L. Gardner, Sullivan Gardner, P.C., New York, NY, Michele Marianna Bonsignore, Michele Marianna Bonsignore P.C., Yonkers, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

The Court held a pre-trial conference in this matter on October 15, 2010 to consider the request of defendant Joseph Olivieri ("Olivieri") to sever the charge that Olivieri committed perjury (the "Perjury Count") during a deposition (the "Deposition") taken in *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, 90 Civ. 5722 (S.D.N.Y). That case was brought under the Racketeer Influenced and Corrupt Organizations Act (the "Civil RICO Case") by the Civil Division of the United States Attorney's Office (the "USAO") for the Southern District of New York. Olivieri also requested that the Court suppress the allegedly perjured testimony he gave in the Civil RICO Case. He asserts Government misconduct on the grounds that prior to the Deposition, the Government did not inform him that he was the target of criminal investigation by the USAO's Criminal Division. The Government requested that the trial proceed as to the Perjury Count only, so that the Court may address the question of admissibility of the Deposition with regard to the other charges at a later time. The Court directed the parties to further brief the issue of suppression of the Deposition to determine whether the trial on just the Perjury Count could move forward at this time.

The Court then held a final pre-trial conference on this matter on October 18,

2010, where it considered motions in limine from the Government, and again addressed Olivieri's motion to suppress his allegedly perjured testimony after further briefing from the parties. The Government in its motions in limine requested, among other things [1], that the Court:

(1) approve the language the Government proposes to summarize redactions directed by this Court of Judge Charles Haight's Order dated October 25, 2007 permitting the Deposition (the "Order");

(2) admit a promissory note and related mortgage signed by Olivieri;

(3) preclude cross-examination of former Carpenters' Union official and Benefit Funds trustee John Greaney ("Greaney") regarding a domestic assault incident that occurred 17 years ago; and

(4) preclude the introduction of records and testimony showing that Olivieri was an effective director of the Wall and Ceiling Association.

Here, the Court addresses in detail only Olivieri's motion to suppress the Deposition. The Court's rulings on the other motions in limine are set forth on the record of the October 18, 2010 conference for the reasons stated there.

## I. OLIVIERI'S MOTION TO SUPPRESS THE DEPOSITION

■■■ The law places no generalized duty on the Government to inform individuals who are being investigated, interviewed, or deposed that they are a target or subject of a criminal investigation. *See United States v. Okwumabua,* 828 F.2d 950, 953 (2d Cir.1987). In the instant case, the Government violation Olivieri alleges is that of a Department of Justice policy and not one based on the United States Constitution or other federal law.

The Court is not persuaded by the cases Olivieri cites in support of his motion to suppress the Deposition in a perjury-only trial. *See United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), *United States v. Jacobs,* 547 F.2d 772 (2d Cir.1976). In *Kordel* the Supreme Court held that a company vice-president, whose responses to the Government's interrogatories in a civil proceeding provided leads for a criminal proceeding, could not later request that the court suppress those interrogatories because he could have invoked his privilege against self-incrimination but did not. *See, Kordel,* 397 U.S. at 5, 90 S.Ct. 763. Similarly, in *Jacobs* the Second Circuit's decision to suppress perjured grand jury testimony was a "one-time sanction to encourage uniformity of practice (whatever that practice might be) between the Strike Force and the United States Attorney in the same district." *Jacobs,* 547 F.2d at 773.

The Court finds the cases cited by the Government more compelling, and controlling as the law in this Circuit. Those decisions support the proposition that even if an individual's perjured testimony is improperly procured because of government

---

1. The Government's other requests were that the Court (1) admit evidence relating to Olivieri's allegedly corrupt relationship with James Murray ("Murray") and his alleged violation of his fiduciary duties as a trustee of the Benefit Funds (the "Benefit Funds") of the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Carpenters' Un-

ion"), and that it (2) preclude the introduction of emails written by Assistant United States Attorney Benjamin Torrance for an improper purpose and from raising Government misconduct allegations before the jury. The Court will address Government's remaining requests during the trial as necessary, as the Court determined during the conference of October 18, 2010.

misconduct, that testimony may still be used to prosecute that defendant for perjury. *See United States v. Remington*, 208 F.2d 567 (2d Cir.1953); *United States v. Winter*, 348 F.2d 204 (2d Cir.1965). In *Remington*, the Second Circuit explained that perjury is a distinct crime:

> [T]o call the perjury a fruit of the government's conduct here, is to assume that a defendant will perjure himself in his defense. It is difficult to see any causal relationship otherwise between the government's wrong and the defendant's act of perjury during trial. If this assumption is a premise of the defendant's argument, we cannot accept it for it involves a disregard of the defendant's oath and an assumption that perjury, although a crime, is an inevitable occurrence in judicial proceedings.

208 F.2d at 570.

The Second Circuit's decision in *Winter* further supports the Court's conclusion. There, the Circuit Court held that "even if appellant were entitled, as a matter of constitutional right, to be advised that he could consult with counsel prior to testifying before the grand jury, omission so to advise him is no defense to a charge that he thereafter perjured himself in the grand jury room." *Id.*, 348 F.2d at 208. As the *Winter* Court explained:

> It is one thing to say that testimony compelled from a grand jury witness who has been denied his right to counsel may not be used to secure his indictment or conviction either for the crimes being investigated or for those revealed during the course of his testimony. . . . It is an entirely different proposition, however, to say that such a witness may with absolute impunity proceed to perjure himself in the hope of avoiding the return of a True Bill. Such a rule would degrade the oath and have the effect of conferring permanent immunity on the perjurer. . . . In summary, we hold that failure to inform a 'potential' defendant of a right to counsel, assuming such a right exists, does not establish a defense to a charge that he thereafter gave false testimony while under oath in response to a material question directed to him by a competent tribunal.

*Id.* at 208–10.

The Supreme Court's plurality decision in *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) further supports the Court's conclusion here. All eight justices in the plurality opinion concluded that even if the government acted improperly by failing to provide a target with Miranda warnings before he testified in front of the grand jury, such misconduct did not require suppression of the defendant's statement's in a subsequent perjury prosecution. *See id.* at 582–83, 608–609, 96 S.Ct. 1768. Accordingly, the Court may deny Olivieri's motion to suppress the Deposition and allow the trial of the Perjury Count to proceed even if the Government engaged in misconduct by not informing him that he was a target of a criminal investigation by the Criminal Division of the USAO before the Civil Division of that same office deposed him in a civil proceeding. Thus, Olivieri's motion to exclude the Deposition from a trial on the Perjury Count is DENIED.

The Government asserts that it is prepared to go forward after a brief evidentiary hearing with all of the counts in Indictment 08 CR 828. The Court is not prepared on this record to proceed with all counts. Thus, the trial will proceed on the Perjury Count alone.

## II. *ORDER*

For the reasons stated above, it is hereby

ORDERED that the motion (Docket No. 235) of defendant Joseph Olivieri is DENIED, and it is further

ORDERED that for the reasons stated on the record at the Court's conference with the parties on October 18, 2010, the Government's motions in limine are GRANTED to the extent indicated there; and it is finally

ORDERED that the trial of defendant Joseph Olivieri will proceed as to the charge in Indictment 08 CR 828 that he committed perjury.

SO ORDERED.